IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
                                    )
          v.                        )          Cr. No. 20-228
                                    )
SAM ZEMA                            )

### Opinion and Order on Motion to Suppress Evidence

Presently before the Court is Defendant Sam Zema's Motion to Suppress Evidence.  ECF

No. 46.  Mr. Zema argues that an affidavit, supporting a search warrant to search Mr. Zema's

home for child pornography, lacked probable cause.  The resulting search, he argues, therefore

violated his Fourth Amendment right to be free from unreasonable searches and requires

suppression of all evidence seized during the November 19, 2019 search of his house.  The

government has filed a Response opposing the Motion.  ECF No. 50.  Mr. Zema filed a Reply, to

which the government filed a  Sur-Reply.  ECF Nos. 51 & 54.  Video oral argument on the

motion was held on June 7, 2022.  ECF No. 58.  After careful review of the challenged affidavit

and search warrant, the motion and all briefing, and the applicable case law, the Defense Motion

will be denied.

### I.  Background

The factual background relevant to the Motion to Suppress comes from the Affidavit in

Support of an Application for a Search Warrant to Search Sam Zema's home in North Versailles,

Pennsylvania.  Aff. Supp. App. for Search Warrant, ECF. 50-1.[1]  The Affidavit was authored by

FBI Special Agent Leonard Piccini, Jr.  The Affidavit recounts that, on October 17, 2019, Mr.

---

[1] "Because our Fourth Amendment inquiry turns on the sufficiency of the affidavit[] of probable cause presented to
the issuing magistrate, the facts are largely drawn from those affidavits."  United States v. Zimmerman, 2 F.4th
160, 164 (3d Cir. 2021).

Zema telephoned Resolve Crisis Center (Resolve)[2] because he was having inappropriate feelings

for underage boys.  Aff. ¶ 23; Tr. Supp. Mot. at 3-4, ECF No. 58.  Mr. Zema explained to the

Resolve counselor that he had had a recent event in his life that triggered his feelings for

underage boys, which prompted his travel by car to find an underage boy of approximately 12

years of age.  Id. ¶ 23.  He told the Resolve counselor that he had previously engaged in

inappropriate sexual relationships with underage males.  Id.  The  Resolve counselor asked Mr.

Zema if he had plans to act on his urges, to which Mr. Zema answered, "I hope not."  Id.  He

stated that the last time he acted on his urges was in the 1980s, and that was with an individual

who has since passed away.  Id.   Thereafter, Resolve Crisis Center generated a Childline

Referral, which the North Versailles Police Department received on October 31, 2019.  Id. ¶ 21.

Acting on the Childline Referral, the North Versailles Police Department detectives

interviewed Mr. Zema by telephone on October 31, 2019.  Id. ¶ 24.  During the interview, Mr.

Zema stated that he is currently having troubles with his significant other.  Id. ¶ 25.  Mr. Zema

told the detectives that, a few weeks ago, while he was driving in the community, he saw, and

was attracted to, a 12- to 14-year-old boy.  Id.  He stated that he followed the boy, without

making contact with him, for a minute or two before leaving the area.  Id.  After leaving the area,

he telephoned Resolve.  Id.

Mr. Zema told the police that he had previously had inappropriate relationships with

underage males.  Id. ¶ 26.  He told the detectives that in the 1980s he had developed a

---

[2] Resolve Crisis Center offers, in part, 24-hour crisis intervention services to anyone in Allegheny County, regardless of ability to pay or type of crisis. The first Resolve contact through a telephone call will be a team member who has undergone extensive training in dealing with crisis situations and who may have gone through similar crises in their own lives.  Resolve also employs a 24-hour on-call psychiatrist, as well as medical staff such as crisis-trained clinicians, nurses, and service coordinators. See, e.g., https://www.upmc.com/services/behavioral-health/resolve-crisis-services

relationship with an underage male prostitute.  Id.  Mr. Zema relayed that, when he recently

attempted to locate that male online, he learned that he had passed away.  Id.  Mr. Zema also

admitted that, approximately twelve years ago, he had had a sexual encounter with an underage

boy.  Id.  He stated that he also had had sexual encounters with underage boys at various truck

stops, but he declined to provide any additional information about such relationships.  Id.

        At this point in the interview, the detectives had become concerned about Mr. Zema's

"recent urges and behaviors as well as his past relationships;" and therefore, the detectives asked

Mr. Zema about his computer use "as it relates to underage boys."  Id. ¶ 27.  The detectives

asked him if he had a computer at his residence, to which Mr. Zema responded, "don't most

people?"  Id. ¶ 28.  Next, they asked him if he "searches for young boys on the internet," to

which Mr. Zema replied, "that he [did] not want to go into that."  Id.  Mr. Zema refused to

provide his email address to detectives.  Id.  Finally, detectives asked Mr. Zema what other

places he has lived.  Id.  ¶ 29.  Mr. Zema named five states where he had previously resided, and

he asked the detectives "if they were going to look for open cases" in those other states.  Id.  Mr.

Zema then concluded the interview.  Id. ¶ 30.

        In his Affidavit, Special Agent Piccini sought authorization to search Mr. Zema's

residence for evidence of violations of two categories of crimes: (i) 18 U.S.C. §§ 2252(a)(2),

2252(a)(4)(B), which prohibit the receipt, distribution, and possession of material depicting the

sexual exploitation of a minor, and (ii) 18 U.S.C. §§ 2242(a) and (b), which make it a crime to

persuade, induce, entice or coerce a minor to travel to engage in prostitution or any sexual

activity, or use, attempt or conspire to use the mail or any facility of interstate commerce to

persuade, induce, entice or coerce any minor to travel to engage in prostitution or any sexual

activity.  Id. ¶ 5.  In Paragraphs 9 through 20 of the Affidavit, Special Agent Piccini related his

3

knowledge, training, and experience with respect to computers and child pornography, as well as the mechanics for searching and seizing evidence from computers. Id. 9-20. In Paragraph 31, he reported detailed "Characteristics Common to Individual's Involved in Receiving Child Pornography and Who Have a Sexual Interest in Children and Images of Children." Id. ¶ 31a-d. In particular, Agent Piccini stated that, based on his own "investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers," he had "learned that individuals who view and receive multiple visual depictions of minors engaged in sexually explicit conduct are often individuals who have a sexual interest in children and in images of children." Id. Special Agent Piccini related that he believed that there was "probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(2), 2252(a)(4)(B), and 2422(a) and (b) may be located in [Mr. Zema's] residence . . . as well as the person of SAM ZEMA."[3] Id. ¶ 32. On November 1, 2019, the Magistrate Judge authorized the Search Warrant. That same day, pursuant to the search warrant, law enforcement searched Mr. Zema's residence, including his computers and other electronic media, and seized evidence. As a result of the evidence obtained from the search, Mr. Zema was charged with one count of possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. §§ 2252(a)(4)(B) & 2252(b)(2).

## II.  Applicable Law

The Fourth Amendment of the United States Constitution protects the public from unreasonable searches and seizures. When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be

---

[3] Special Agent Piccini sought, and received, authorization to search and seize property as listed on ATTACHMENT B to the Affidavit. ECF No. 50-1, at 15-21.  Attachment B purports to have agents seize records in "any format and medium," and also specifically refers to computers, computer files, cell phones, smart phones, and other items.

found in a particular place.'"  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting

Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)).  The test, as set forth in

Gates, requires that the issuing magistrate "make a practical, common sense decision whether,

given all the circumstances set forth in the affidavit before him, including the 'veracity' and

'basis of knowledge' of persons supplying hearsay information" there is probable cause to

support a warrant.  Id. at 238.  A magistrate's "determination of probable cause should be paid

great deference by reviewing courts."  Id. at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial

basis for ... conclud[ing]' that probable cause existed."  Gates, 462 U.S. at 236 (quoting Jones v.

United States, 362 U.S. 257, 271 (1960)).  "The supporting affidavit must be read in its entirety

and in a commonsense and nontechnical manner."  Conley, 4 F.3d at 1208.  A warrant must be

upheld "as long as there is a substantial basis for a fair probability that evidence will be found."

Id. at 1205.  Reviewing courts, however, must not "simply rubber stamp a magistrate's

conclusions."  United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir.1983).

**III. Discussion**

Mr. Zema contends that the Affidavit lacks probable cause because it does not contain

evidence that Mr. Zema ever possessed, received, or distributed child pornography, and because

it does not contain any evidence connecting Mr. Zema or his residence to the possession of child

pornography.  He argues that the Affidavit also fails to aver, or make the connection, that

individuals who have a sexual interest in children are also individuals who view and receive

depictions of minors engaged in sexually explicit conduct; and further, the Affidavit fails to tie

this supposition to Mr. Zema.  Mr. Zema argues that, pursuant to relevant Third Circuit

precedent, probable cause cannot be established where the Affidavit fails to assert a relational

nexus that *demonstrates*, rather than merely asserts, that those who have a sexual interest in

children are also those who collect child pornography.  United States v. Zimmerman, 277 F.3d

426 (3d Cir. 2002), United States v. John, 654 F.3d 412 (3d Cir. 2011).[4]

Additionally, Mr. Zema argues that, like in Zimmerman and John, the good faith

exception to the exclusionary rule would not apply in this case, because the Affidavit was so

lacking indicia of probable cause that it would be unreasonable for a law enforcement officer

executing the warrant to believe that probable cause existed.  United States v. Leon, 468 U.S.

897, 923 (1984); United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001).

The government argues that the Search Warrant is supported by probable cause, and even

if is not, the good faith exception would apply pursuant to United States v. Caesar, 2 F.4th 160

(2021), wherein the Third Circuit applied the good faith exception to factually similar

circumstances.

## A.      The *John*, *Zimmerman*, and *Caesar* Cases

Both parties cite the Third Circuit cases of John, Zimmerman, and Caesar as relevant to

the present Affidavit of probable cause.  In both Zimmerman and John, the affiant failed to assert

that the accused was a person who purchased or possessed child pornography or who kept child

pornography in the home.  Zimmerman, 277 F.3d at 432-33; John, 654 F.3d at 419.

In Zimmerman, the Affidavit included an averment from the Postal Inspector in which he

expressed his opinion that "persons with a sexual interest in children may possess child

pornography and keep it in their homes for extended periods of time."  Zimmerman, 277 F.3d at

431.  Because it was undisputed that there was no probable cause, there was no need for the

---

[4]  The Defense also relies on United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) ("Perhaps it is true that all or most people who are attracted to minors collect child pornography. But that association is nowhere stated or supported in the affidavit"); United States v. Hodson, 543 F.3d 286, 289 (6th Cir.2008) (No probable cause where affidavit failed to provide any connection between child molestation and child pornography).

Third Circuit to consider the weight to give the postal inspector's molestation-pornography correlation statement.  Id. at 434 n. 4.  Nonetheless, the Court "noted" that the postal inspector's opinion was "not tailored to the specific facts of the case," which is necessary for the opinion to have value.  Id.   The Third Circuit further noted the postal inspector's boilerplate statement was not tailored to defendant Zimmerman or his case: "there was nothing in the statement about Zimmerman, the facts of Zimmerman's case, or the result of the investigation" of Zimmerman. Id.  Thus, the Third Circuit opined that, without additional factual support, the postal inspector's boilerplate opinion as to a molestation-pornography link "may have added fat to the affidavit, but certainly no muscle."  Id.

In John, the Third Circuit concluded that, to find probable cause, one had to believe that a person who sexually assaults a child "is also likely to collect child pornography."  John, 654 F.3d at 419.  The assumed connection was not stated in the John affidavit.  Even if the assumed connection was asserted in the affidavit, the Third Circuit concluded that the statement must be supported "with averments stating the basis for the allegation."  Id.  The question of an assault-pornography connection is, according to the John case, a question "that can be resolved only through the evaluation of evidence," which "must be alleged on the face of the affidavit in order to be considered for purposes of determining probable cause."  Id.

Finally, in Caesar, the only issue directly addressed by the Third Circuit was whether the good faith exception applied.  Caesar, 2 F.4th 168-69.  Relevant to the present case, the Caesar Court recalled that in "both John and Zimmerman we expressed skepticism about the existence of an 'intuitive relationship' between child sexual abuse and child pornography."  Id. at 176. However, as related to the question of whether the law enforcement officer in Caesar acted in good faith in executing the search warrant, the Third Circuit stated that "we cannot ignore the

volume of social science research and legal authority discussing the tendency of child sexual abusers to possess child pornography." Id.  The Court went on to cite that the United States Legislature and the United States Sentencing Commission have "weighed in" on the molestation-child pornography connection commenting on the apparent connection between the use or collection of child pornography and sexual abusers. Id. at 176-77.  Importantly, after this review and noting that other Circuit Courts have called the molestation-child pornography connection "common sense" or "intuitive," the Caesar Court stated: "Guided by our opinion in John, we do not go that far." Id. at 177.  Therefore, John and Caesar, read together, stand for the proposition that a molestation-child pornography correlation alleged in an affidavit must be explicitly stated and factually supported.

### B.     Probable Cause

Mr. Zema argues that when Special Agent Piccini applied for the search warrant, he had no information indicating that Mr. Zema was likely to have child pornography in his home or on his electronic devices.  The defense also points out that there is no averment in the Affidavit that Mr. Zema is a person who purchased child pornography, possessed child pornography, and/or stored child pornography in his home.  In addition, the defense argues that the only criminal conduct by Mr. Zema that Special Agent Piccini was aware of was conduct that occurred twelve years or more prior to the date of the detectives' interview, and that such conduct did not involve child pornography or electronic devices.  The defense recognizes that Special Agent Piccini knew that Mr. Zema had recently had inappropriate feelings for underage males, that he identified and followed an underage male while Mr. Zema was driving in his car, that he called Resolve as a result of his inappropriate feelings, and that he had a computer in his home.  The defense argues that none of these facts are related to depictions of child pornography or storing

such images.  Therefore, the defense argues that deficiencies in the Affidavit are nearly identical to the deficiencies present in <u>Zimmerman</u> and <u>John</u>; and thus in this case, Special Agent Piccini's Affidavit is not supported by probable cause.

The Affidavit requests authorization to search for evidence of two different crimes, the sexual exploitation of minors and child pornography.  The Court will evaluate whether probable cause is established as to each category of crime.[5]

### 1.      Sexual Exploitation of Minors

The Affidavit contains the following averments related to a requested search for evidence of a violation of 18 U.S.C. §§ 2242(a) and (b).  Mr. Zema told the Resolve counselor that he was having inappropriate sexual feelings towards underage males and that he decided to contact Resolve after following an underage boy he saw on the street.  When asked if he would act on his urges, Mr. Zema said, "I hope not."  During his interview with the New Kensington Police Department detectives, Mr. Zema confirmed that he had recently had inappropriate sexual feelings for underage males and that he was attracted to and followed an underage boy.

Based on these averments, a magistrate judge would know that Mr. Zema was presently having inappropriate sexual feelings for underage males, that he had begun to act on those feelings to the extent that he followed an underage male, and that he "hopes" he will not act on his feelings again.  A magistrate judge could reasonably infer from such averments that Mr. Zema presently represents a danger to the community.

Sexual exploitation of minors as defined in sections 2242(a) and (b) of Title 18 of the United States Code, make it a crime to persuade, induce, entice or coerce a minor to travel to engage in prostitution or any sexual activity, or use, attempt or conspire to use the mail or any

---

[5]  Neither the Defense nor the government argued the legitimacy of the Warrant in relation to searching for evidence of the sexual exploitation of minors.

facility of interstate commerce to persuade, induce, entice or coerce any minor to travel to engage in prostitution or any sexual activity. With respect to evidence of sexual exploitation of minors that might be found on electronic devices specifically, Special Agent Piccini stated in the Affidavit that, "evidence of child exploitation . . . offenses can be found in electronic media," and that such evidence may consist of "internet searches, addresses, telephone numbers, and contacts, as well as incriminating communications via emails, instant messages, or text messages." Aff. ¶ 8. The Affidavit makes the connection between an individual, such as Mr. Zema, who has a sexual interest in children, using a "facility of interstate commerce," such as an electronic device, to persuade, induce, entice or coerce any minor to travel to engage in prostitution or any sexual activity. Thus, probable cause to search Mr. Zema's electronic devices for such evidence is properly established. The above averments and reasonable inferences therefrom support probable cause to search Mr. Zema's residence and electronic devices for evidence of the crime of sexual exploitation of minors in violation of 18 U.S.C. §§ 2242(a) and (b).

2.      **Child Pornography**

The Affidavit here establishes probable cause to search for child pornography. Special Agent Piccini averred that there is a correlation between individuals who view child pornography and individuals who have a sexual interest in children and in images of children. He stated that, based on his "previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions," he has learned that "individuals who view and receive multiple visual depictions of minors engaged in sexually explicit conduct are often individuals who have a sexual interest in children and in images of children." Id. ¶ 31a.

10

In contrast to the affidavits in <u>Zimmerman</u> and <u>John</u>, Special Agent Piccini provided a separate factual basis to support his statement of a correlation between those who have a sexual interest in children and those who possess child pornography.[6] <u>Caesar</u>, 277 F.4th at 177 (officers who rely on a molestation-pornography correlation must provide factual basis for magistrate judge to evaluate). Special Agent Piccini stated that the detectives were concerned about Mr. Zema's admitted "recent urges and behaviors" related to his sexual interest in underage boys; and therefore, the detectives asked Mr. Zema about his computer use "as it relates to underage boys." Aff. ¶ 27. The detectives specifically asked Mr. Zema if he "searches for young boys on the internet." <u>Id.</u> ¶ 28. Mr. Zema declined to answer that question and he declined to provide detectives with his email address. <u>Id.</u> Such facts support a connection between Mr. Zema's sexual interest in children and the likelihood that he would possess child pornography.

From these averments, a magistrate judge could conclude that Mr. Zema, who has admitted that he has a present sexual interest in underage males, is likely to be an individual who possesses depictions of minors engaged in sexually explicit conduct. Therefore, based on Mr. Zema's sexual interest in children and his refusal to say whether he searches the internet for young boys, along with the averment of a molestation-pornography correlation, a magistrate judge could reasonably conclude that probable cause existed to believe that evidence of depictions of minors engaged in sexually explicit conduct are likely to be found through a search of Mr. Zema's residence and electronic devices. Therefore, a magistrate judge could properly conclude that there is sufficient probable cause to believe that Mr. Zema's computer would likely

---

[6] The factual averments here are distinct from those in <u>Zimmerman</u>, <u>John</u>, and <u>Caesar</u> in that in the present case all factual averments consist of Special Agent Piccini's report of information that Mr. Zema personally and contemporaneously provided, either to the Resolve counselor on October 17, 2019, or to the detectives who interviewed him on October 31, 2019. The Affidavit contains no averments from witnesses, informants, or third-party accusers.

contain evidence of sexually explicit images of children in violation of 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B).

The defense argues that, when Mr. Zema declined to answer the detectives' internet search question, he was exercising his constitutional right to remain silent, and that such cannot form the basis for probable cause. Def. Mot. 4 (citing Florida v. Royer, 460 U.S. 491, 498 (1983); Brown v.Texas, 443 U.S. 47, 51–52 (1979). In Royer, the Supreme Court addressed a situation where two detectives approached Royer because they suspected he was a drug courier and asked to talk to him. In Royer, the detectives had no evidence to support their suspicion that Royer was a drug courier. In relevant part, the Royer opinion concerned the question of whether Royer had been lawfully detained. Relevant to the present case, the Supreme Court stated that, a person "may not be detained even momentarily without reasonable, objective grounds for doing so; and *his refusal to listen or answer* does not, *without more*, furnish those grounds." Royer, 460 U.S. 498 (emphasis added).

While Mr. Zema's refusal to answer cannot be viewed as an admission, a magistrate judge may consider it in context of all relevant averments. By the time the detectives decided to ask Mr. Zema about his computer "as it relates to underage boys," they explained they did so because they had become concerned about Mr. Zema's "recent urges and behaviors as well as his past relationships." Id. ¶ 27. The decision to ask Mr. Zema the "internet search" question was directly based upon Mr. Zema's prior responses, which were reported within in the Affidavit. Thus, in this case, the detectives were not acting on a "mere hunch" when they asked Mr. Zema about whether he searched the internet for young boys. Additionally, the other averments in the Affidavit , which directly related to the investigation of Mr. Zema,  provide the "more" that the Supreme Court requires to establish grounds for probable cause when a person does not answer

an officer's question. <u>Royer</u>, 460 U.S. at 498. The totality of the circumstances supports that probable cause existed and that there was no violation of Mr. Zema's constitutional rights.

### 3.    Conclusion

The Court finds that a magistrate judge, reviewing the Affidavit as a whole and in a commonsense manner, could reasonably conclude that there is a fair probability that contraband or evidence of a crime would be found in Mr. Zema's residence and on his electronic devices. <u>Conley</u>, 4 F.3d at 1205. Therefore, the Court concludes that the Magistrate Judge, who reviewed the Affidavit, had a substantial basis to conclude that probable cause existed to authorize the search of the residence and electronic devices therein. <u>Gates</u>, 462 U.S. at 236. The search pursuant to the Warrant was therefore proper. Accordingly, Mr. Zema's Motion to Suppress Evidence will be denied.

### B.    Good Faith Exception

Even if this Court concluded that the Affidavit did not provide probable cause to search Mr. Zema's residence and electronic devices, which it does not, suppression of the evidence of child pornography would not be warranted. The exclusionary "rule's sole purpose, . . . is to deter future Fourth Amendment violations." <u>Davis v. United States</u>, 564 U.S. 229, 236–37, (2011). "[B]ecause some unconstitutional conduct is unlikely to be deterred by the threat of sanctions, exclusion is not a blanket remedy." <u>John</u>, 654 F.3d at 417. "'To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" <u>United States v. Wright</u>, 777 F.3d 635, 638 (3d Cir. 2015) (quoting <u>Herring v. United States</u>, 555 U.S. 135, 144 (2009)).

Here, Special Agent Piccini's reliance upon the Warrant was reasonably based upon his belief that the facts learned from the investigation indicated that Mr. Zema was an individual who fit the molestation-pornography correlation.   Moreover, Special Agent Piccini did more than provide the magistrate judge with a boilerplate recitation of the correlation.  He provided facts specific to Mr. Zema to demonstrate that he was an individual who was likely to have child pornography on his electronic devices or in his home.  Caesar, 277 F.4th at 177-78 (affiant in Caesar *attempted* to offer a factual basis to support molestation-pornography connection "further supporting" the conclusion that he acted in good faith).  Also, as noted in Caesar, "in assessing whether [an officer] acted in good faith, we cannot ignore the volume of social science research and legal authority discussing the tendency of child sexual abusers to possess child pornography."  Id. at 176.  In addition, the Third Circuit "credit[ed] the weight of these authorities in concluding it was not entirely unreasonable for an officer to believe the initial affidavit set forth probable cause to search for the images."  Id. at 177.  The Court concludes that it was not unreasonable for Special Agent Piccini to believe that the Affidavit provided probable cause to search for depictions of the sexual exploitation of children.  Special Agent Piccini's conduct is not likely to be deterred by the threat of sanctions; and therefore, exclusion of the recovered evidence would not be warranted.  Accordingly, the Court finds that Special Agent Piccini acted in good faith when he relied on the Warrant.

**IV.  Conclusion**

Notwithstanding Zimmerman and John, the Court concludes that the Affidavit here provided sufficient facts to establish probable cause to support the issuance of the Warrant to search Mr. Zema's residence and computers.  Further, even if probable cause were not

established, the Court finds that Special Agent Piccini acted in good faith when he relied upon

the search warrant.  Therefore, Mr. Zema's Motion to Suppress Evidence will be denied.

## **ORDER**

AND NOW, this 10th day of April 2023 it is hereby ORDERED that Defendant Sam

Zema's Motion to Suppress Evidence (ECF No. 46) is DENIED.

Marilyn J. Horan
United States District Judge